UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AIDA R. GIL,

                         Plaintiff,

            -against-

JORGE DOPICO; ROBERT F. MURPHY,

                         Defendants.

25-CV-7274 (KMW)

ORDER OF DISMISSAL

KIMBA M. WOOD, United States District Judge:

        Plaintiff, appearing *pro se*, brings this action under 42 U.S.C. § 1983, alleging that

Defendants violated her federal constitutional rights.  By Order dated December 4, 2025, the

Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without

prepayment of fees.[1]  (ECF No. 7.)  The Court dismisses this action for the reasons set forth

below.


                              **STANDARD OF REVIEW**

        The Court must dismiss an IFP complaint, or any portion of the complaint, that is

frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary

relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see*

*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The Court must also

dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised.  *See*

Fed. R. Civ. P. 12(h)(3).

---

[1] By order dated September 16, 2025, Chief Judge Laura Taylor Swain directed Plaintiff
to either file an amended IFP application or pay the $405.00 in fees.  (ECF No. 5.)  Plaintiff filed
an amended IFP application on September 17, 2025.  (ECF No. 6.)

Although the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citations omitted) (emphasis in original).  But the "special solicitude" courts provide to *pro se* litigants, *id*. at 475 (citation omitted), has its limits –- to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true, but it need not  accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.] *Id*. at 678-79.  After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible –- not merely possible –- that the pleader is entitled to relief. *Id.* at 678.

## BACKGROUND

The following facts are drawn from the complaint.[2]  Between 2023 and 2025, Plaintiff was involved in housing court litigation against her landlord, who was represented by attorneys

---

[2] The Court quotes from the complaint verbatim.  All spelling, grammar, and punctuation appear as in the complaint unless otherwise noted.

from Azoulay Weiss, LLP.  During these housing court proceedings, Plaintiff's landlord's attorneys "engaged in professional misconduct including making false statements to the court about Plaintiff's compliance with remediation procedures, intimidating an unrepresented disabled tenant, and failing to ensure client compliance with court orders, housing regulations, and disability accommodation requirements." (ECF No. 1, at 2.)  On April 22, 2025, Plaintiff filed a complaint with the Attorney Grievance Committee against three attorneys from Azoulay Weiss.  Plaintiff alleges that, rather than following "mandatory procedures" set forth in New York state law, Defendants "engaged in a pattern of regulatory violations designed to avoid substantive investigation of Plaintiff's valid complaints."  (*Id.*)

Plaintiff alleges that on June 11, 2025, Defendant Dopico, who is the Chief Attorney of the Attorney Grievance Committee, New York State Supreme Court, Appellate Division, First Department, "improperly 'deferred' Plaintiff's complaint . . . claiming it involved allegations 'substantially similar' to pending litigation."  (*Id.* at 3.)  Plaintiff contends that, when she requested reconsideration of an adverse decision, Defendant Murphy, who is the Staff Investigator of the Attorney Grievance Committee, "improperly applied" the wrong section of the state law.  (*Id.*)  On August 28, 2025, Dopico "issued a final decision by email/letter claiming 'no new evidence warranting further investigation' while completely ignoring all procedural violations documented by Plaintiff."  (*Id.* at 4.)  Plaintiff further alleges that the dismissal decision "falsely claimed the complaints were 'initially dismissed' when Defendants' own records show they were 'deferred.'"  (*Id.*)  Plaintiff asserts that her experience with the Grievance Committee "demonstrates a pattern of pretextual decision-making designed to avoid substantive investigation rather than genuine application of regulatory standards."  (*Id.*)

3

Plaintiff sues Defendants in both their individual and official capacities.  Plaintiff asserts claims that Defendants violated her federal constitutional rights to procedural and substantive due process, equal protection, and access to the courts, as well as her rights under the Americans with Disabilities Act ("ADA") and the Fair Housing Act ("FHA").

Plaintiff seeks money damages, as well as declaratory and injunctive relief.

## DISCUSSION

**A.    Official Capacity Claims**

The Court dismisses Plaintiff's claims against Defendants in their official capacities. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity[.]" *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks, alterations, and citation omitted).  The immunity recognized by the Eleventh Amendment "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*. (alteration and citation omitted).  This immunity shields states and their agencies from claims for money damages, injunctive relief, and retrospective declaratory relief.  *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984).  "To the extent that a state official is sued . . . in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).  Thus, the Eleventh Amendment precludes claims against individual state-officer defendants, in their official capacities, for damages, retrospective injunctive relief, and retrospective declaratory relief.  *See Green*, 474 U.S. at 72-74; *Halderman*, 465 U.S. at 101-02; *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022);

*Pineda v. Doe 1-2*, No. 7:25-CV-4552 (JGLC), 2025 WL 2145661, at *2-3 (S.D.N.Y. July 29, 2025).  In addition, courts of the New York State Unified Court System are arms of the state that enjoy Eleventh Amendment immunity.  *See Gollomp*, 568 F.3d at 368 ("[T]he New York State Unified Court System is unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment sovereign immunity." (citation omitted)).

Here, Plaintiff asserts official-capacity claims against two officials of the Attorney Grievance Committee of the New York State Unified Court System.  Because such claims are deemed to be claims against the State of New York, the Court dismisses Plaintiff's official-capacity claims as barred by the Eleventh Amendment.  *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

**B.     Immunity**

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam).  "[A]cts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009).  "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209 (citations omitted).  In addition, Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983.

Prosecutors are also immune from civil suits for damages for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are "'intimately associated with the judicial phase of the criminal process.'"  *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity is

analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it" (internal quotation marks and citations omitted)).

"Under the doctrine of quasi-judicial immunity, the scope of absolute immunity encompasses the actions of others 'who perform functions closely associated with the judicial process.'" *Truong*, 2006 WL 3635319, at \*3–\*4 (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). Similarly, "officials performing certain functions analogous to those of a prosecutor" may also claim absolute immunity. *Butz v. Economou*, 438 U.S. 478, 515 (1978).

Court have extended quasi-judicial immunity and prosecutorial immunity to staff members of the Attorney Grievance Committees of state courts.[3] *See, e.g.*, *Neroni v. Coccoma*, 591 F. App'x 28, 30 (2d Cir. 2015) (summary order) ("[W]e have consistently extended quasi-judicial immunity to attorney disciplinary committees." (citing and quoting *Anonymous v. Ass'n of the Bar of the City of New York*, 515 F.2d 427, 433 (2d Cir. 1975)); *McKewon v. N.Y. State Comm'n on Jud. Conduct*, 377 F. App'x 121, 124 (2d Cir. 2010) (summary order) ("Prosecutors, hearing examiners, and law clerks are eligible for absolute immunity, and those involved in preparing and adjudicating attorney discipline proceedings share analogous roles." (citing, *inter alia*, *Oliva v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988))); *Napolitano v. Saltzman*, 315 F. App'x 351, 351-52 (2d Cir. 2009) (summary order) ("Saltzman enjoys absolute immunity for his actions as counsel to the Grievance Committee, which are 'quasi-public adjudicatory [or]

---

[3] In New York, the Appellate Divisions are charged with enforcing attorney discipline for violations of New York rules of professional conduct. N.Y. Jud. Law. § 90(2). The Appellate Divisions establish grievance committees to handle attorney discipline and appoint chief attorneys and other staff to the grievance committees as needed. 2 2 N.Y.C.R.R. §§ 1240.4, 1240.50. The chief attorney investigates and prosecutes misconduct complaints before the committees. *Id.* § 1240.7. If the committee determines that the evidence supports public discipline, such as suspension, the committee prosecutes the misconduct allegations in a formal hearing before the relevant Appellate Division. *Id.* § 1240.8

6

prosecutorial' in nature.  In receiving the complaints about [an attorney], investigating them, and making recommendations to the Appellate Division, Saltzman was clearly acting within the scope of his jurisdiction.  The allegation that he may have violated procedural or ethical rules is irrelevant, as it is the nature of the act and not the impropriety of the act that matters." (citations omitted));  *Finn v. Anderson*, No. 12-CV-5742, 2013 WL 12085092, at *9 (S.D.N.Y. Sept. 6, 2013) ("[P]ersons working for Grievance Committees, conducting investigations and proceedings, act in a quasi-judicial capacity.  Indeed, . . . counsel to New York State Grievance Committees are included among the others who are afforded absolute quasi-judicial immunity."), *aff'd*, 592 F. App'x 16 (2d Cir. 2014) (summary order).

Here, Plaintiff asserts claims against the Attorney Grievance Committee's Chief Attorney Jorge Dopico and Robert Murphy, its Staff Investigator.  Both Defendants are immune from Plaintiff's claims.  *See, e.g.*, *Salis v. Dopico*, No. 24-1066-CV, 2025 WL 880407, at *2 (2d Cir. Mar. 21, 2025) (holding that Dopico, in his role as chief attorney to the Grievance Committee, is entitled to prosecutorial immunity);  *Finn*, 592 F. App'x at 19 ("This Court has consistently extended such 'quasijudicial' immunity to investigators with attorney grievance committees[.]").  The Court therefore dismisses Plaintiff's claims against Dopico and Murphy in their individual capacities as barred by the doctrines of quasi-judicial and prosecutorial immunity.  *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

## C.    ADA and FHA Claims

Plaintiff also asserts claims under the ADA and the FHA. Title II of the ADA forbids discrimination against persons with disabilities in, among other areas of public life, public services, programs, and activities.  *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004).  It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public

entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim of discrimination under Title II of the ADA a plaintiff must allege that (1) she is a qualified individual with a disability; (2) the defendant is subject to the Title II of the ADA; and (3) the plaintiff was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant, by reason of the plaintiff's disability. *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009).

The FHA "broadly prohibits discrimination in housing," *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979), based on an individual's race, color, religion, sex, familial status, national origin, or disability, 42 U.S.C. § 3604(a), (f)(1). Generally, to state a claim of intentional discrimination under the FHA, a plaintiff must allege facts showing that (1) she is a member of class of individuals protected under the FHA; (2) she suffered "adverse treatment"; and (3) the defendant discriminated against her based on her protected classification. *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (summary order) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (internal quotation marks omitted)).

Here, Plaintiff's claims under the ADA and FHA appear to rest on her allegation that the attorney conduct giving rise to her complaint to the Grievance Committee occurred during proceedings in the state courts that included allegations that Plaintiff's landlord discriminated against her because of a disability. Although in those state court proceedings Plaintiff claimed violations of the ADA and the FHA, Plaintiff alleges no facts to support her contention that the Defendants in this action took any adverse action against her with respect to housing based on a disability. The Court therefore dismisses any claims Plaintiff is asserting under the ADA and the FHA for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**D.**      **Leave to Amend is Denied**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  Because Defendants are absolutely immune from suit and defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend her complaint.

**CONCLUSION**

The Court dismisses the complaint, filed IFP under 28 U.S.C. § 1915(a)(1), as barred by the Eleventh Amendment, barred by the doctrines of quasi-judicial and prosecutorial immunity, and for failure to state a claim on which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii), (iii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter judgment dismissing this action.

SO ORDERED.

Dated:      February 3, 2026
            New York, New York

/s/ Kimba M. Wood

KIMBA M. WOOD
United States District Judge